## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GRACE DAUGHTRIDGE<br>625 G Street, SW<br>Washington, DC 20024<br><br>And<br><br>BETTY J. DAUGHTRIDGE<br>625 G Street, SW<br>Washington, DC 20024<br><br><br>Plaintiff,<br><br>v.<br><br>CARROLLSBURG SQUARE<br>CONDOMINIUM ASSOCIATION, Inc.<br>SERVE:<br>Benny L. Kass, Registered Agent<br>1050 17th Street, NW<br>Washington, DC 20036<br><br>And<br><br>TRAVELERS INDEMNITY COMPANY<br>OF AMERICA<br>SERVE:<br>Registered Agent<br>1090 Vermont Ave. NW<br>Washington, DC 2005<br>AND<br>CT Corporation Systems<br>1015 15th Street, NW<br>Washington, DC 20005 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CASE NUMBER: 07-0628 (PLF)
Judge Paul L. Friedman

## PLAINTIFF'S RESPONSE TO DEFENDANTS OPPOSITION TO PLAINTIFFS MOTION TO REMAND

Plaintiff's Daughtridge, by and through Counsel, hereby submits this response to Defendant's Opposition to the motion to remand.

### I.     Introduction

Plaintiff's Daughtridge have suffered fire related damage to their property which is covered under a policy of insurance signed by Defendant Travelers to Defendant Carrolsburg Square Condominium Association. In an attempt to seek a remedy for the cost to repair damages incurred both from the fire, and from the delay in repair, Plaintiff's have filed suit against both the Association and Defendant Travelers. Travelers makes the assertion that Plaintiff's claims against the Association are without merit, and from that conclusion avers that the inclusion of the Association in this suit is made with the intent to defeat diversity jurisdiction. Notably, the Association has not joined in the motions to date.

The arguments asserted by Defendant Travelers are both legally and factually incorrect, the Plaintiff's both assert cognizable claims against the Association, and Plaintiffs seek a remedy from said Association for the cost of the repairs, and recompense for the delay in repairs, insufficient insurance coverage, and for incomplete work by the Association on limited common element repairs (roof and balcony), said incomplete work preventing additional work on the property. As Plaintiff's suit against the Association asserts legally cognizable claims, the Defendant's allegations of fraudulent joinder are also without merit. Secondly, Plaintiff's purpose in filing suit is to remedy current damage to the property, remedy damage in delay of restoration of the property, and to remedy inadequate repairs on

the property. Such repairs were on limited common elements which to date have not been completed, but the Association concedes such repairs were its obligation. Alignment of the parties around this purpose does not destroy diversity jurisdiction.

While Defendant's do make a strong argument that suits for insurance coverage solely do provide diversity jurisdiction, application of that conclusion to this case arises only from the Defendants subjective and self-serving interpretation of the complaint as not asserting any valid claims against the Association. In reviewing the complaint, the Court should construct the claims in favor of the Plaintiff, not the movant. The complaint does in fact assert valid legal claims against the Association, and therefore includes a prayer for damages against the Association. Defendant's confusion as to what claims may or may not be can be remedied from amendment to the complaint and/or discerned from filings to date, or Defendant may seek discovery. Attempts to support their conclusion by reference to what may or may not have occurred in a multitude of unrelated insurance litigation is both a non sequitor and irrelevant.

## II.    Background

Plaintiff's Grace and Betty Daughtridge are the owners of a condominium property which has suffered fire related damages. Said condominium is located at 1257 Delaware Avenue, S.W., Washington D.C., also known as Lot 2056, Square 0546 in the District of Columbia. (hereinafter "the Property") The Property is governed by the Carrollsburg Square Condominium Association. (hereinafter "the Association") Pursuant to D.C. Code §42-1903 et seq., the Association placed an insurance policy written by The Travelers Indemnity

Company of America to insure the premises and limited common elements under its control in the event of a fire.

On March 19, 2004, the Plaintiff's property was severely damaged by fire, which is an insured risk under the insurance policy, and Plaintiff was an intended beneficiary under said policy. Defendant Travelers conceded coverage and made a settlement offer to the Association, which the Plaintiff's, as the owners of the covered premises, found to be insufficient to cover the entire loss. In finding this insufficiency, the Plaintiff's advised the Association as such, and after the Association considered the Plaintiff's position they too found the offer to be inadequate. However, thereafter the Association did not settle the insurance claim, nor did the Association resolve the discrepancy between any offers from Defendant Travelers and the actual costs of the repair of the damage as perceived by Plaintiffs. Thus, for almost three years, Plaintiff's were deprived of the use of their property by the Association's delay.

The Associations failure to settle the insurance claim, or to pursue the matter vigorously, is a breach of their fiduciary and statutory duty to the Plaintiffs. The Association further refused to allow the Plaintiff's to hire their own work force to come in and repair the damage, which resulted in further damage to Plaintiff's and the Property, and the Association has not completed repairs on limited common elements, which are admittedly the Associations responsibility.

### III.    Discussion

#### a.  Plaintiff's Assert Cognizable Claims Against the Association

Plaintiffs statutory claims against the Association can be found under §42-1903 et seq.

Specifically D.C. Code §42-1903.10 obligates the Association to maintain insurance coverage

on the property.  In so insuring the property, the Association is likewise responsible to adjust

any difference between the amount of coverage and the amount of damage as set forth under

D.C. Code 42-1903.10(f).

> Any loss covered by the property policy under subsections (b)(1) and (c) of
> this section shall be adjusted with the unit owners' association, but the
> insurance proceeds for the loss shall be payable to any insurance trustee
> designated to receive payments or otherwise to the unit owners'
> association...

While it is true that this section provides the insurer should deal directly with the unit

owners' association, this section likewise proffers that losses covered under said insurance are

to be adjusted with the unit owners' association, meaning both that individuals unit owners,

such as Plaintiff, are forced to rely upon the Association to settle claims with the insurers and

the insured, and that that losses incurred from insured damages, when insufficient, are to be

recompensed to the extent that they remain unremedied, by the Association.

D.C. Code 42-1903(i) further provides as follows:

> Any portion of the condominium for which insurance is required under this
> section that is damaged or destroyed shall be repaired or replaced promptly
> by the unit owners' association unless the condominium is terminated,
> repair or replacement would be illegal under any health or safety statute,
> rule or regulation, or 80% of the unit owners, including every owner of a
> unit or assigned limited common element which will not be rebuilt, vote
> not to rebuilt.  The cost of repair or replacement in excess of insurance
> proceeds and reserves shall be a common expense.

This section provides that when damage is incurred, and the damage is of a type that insurance is required, the Association shall repair or replaced the damaged property promptly. Furthermore, the damage is treated as a common expense, meaning it is payable by the Association from their condominium fund. The Associations cognizance of this requirement is likewise noted by their updated bylaws which contain highly similar language.[1] The Association in fact carried insurance coverage, Plaintiff's aver that the coverage may prove to be inadequate and Defendant Association is responsible for the balance.

In the current situation the Association had a policy covering the property for fire related damage. As a result of the statute and the policy, it was incumbent upon the Association to deal with the insurance company regarding coverage in a manner which conforms to their statutory duties regarding prompt repair, as well as the carrying of adequate coverage. However the Association, in response to insufficient offers of value (due in part to the Associations insufficient coverage, and/or accepting a policy which did not provide for the cost of replacement as opposed to actual cash value), instead both failed to file suit against the company for breach of contract as well as provide prompt adequate repair of the property and limited common elements. Furthermore, the Association also prevented the Plaintiffs from making repairs as well. All of these acts and omissions are tortuous, and give rise to a cause of action.

Application of the bylaws in place at the time of the damage likewise reflects the duty of the Association to timely repair Under Section G regarding insurance coverage, the bylaws state as follows:

> If any part of the Common Elements or the Condominium Units shall be damaged by casualty, the determination of whether or not to reconstruct or repair the same shall be made as follows:

---

[1] *See* Exhibit A

> Where there is partial destruction, which shall be deemed to mean destruction which does not render two-thirds or more of the Condominium Units untenantable, there shall be compulsory reconstruction or repair.
> …
> Any such reconstruction or repair shall be substantially in accordance with the original Plans and Specifications under which the … Condominium was originally constructed.[2]

Conjunctively comparing these statutes and bylaws set forth what amounts to essentially three duties of the Association. Firstly, the Association is the adjustor in regard to insurance claims filed in relation to covered property. Secondly, the Association has a duty to promptly repair or replace damaged property. Thirdly, if there is a discrepancy between the coverage and the damage, the difference is to be covered as a common expense. All three of these duties were breached by the Association, and as damage was incurred from said breach, the Plaintiff's resultantly have valid and actionable claims against the Association in the District of Columbia and accordingly brought this action. Whereas the filing of multiple actions would result in a waste of valuable judicial resources, have the danger of inconsistent results, and result in circuitry of actions.

### b. Realignment does not result in Diversity Jurisdiction

In the case of <u>City of Indianapolis</u>, the United States Supreme Court found that for diversity jurisdiction there must be an "'actual' and 'substantial' controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side."[3] In making the determination whether diversity jurisdiction exists, the Court noted that "Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who are defendants.

---

[2] *See* Exhibit B.

[3] Indianapolis et al. v. Chase National Bank, Trustee, et al., 314 U.S. 63, 69 (U.S. 1941).

It is our duty, as it is that of the lower federal courts, to look beyond the pleadings and arrange the parties according to their sides in the dispute." In so doing, the Court found that "Whether the necessary 'collision of interests' exists… must be ascertained from the 'principal purpose of the suit' and the 'primary and controlling matter in dispute.'"[4]

In the current situation the primary purpose of the lawsuit is to seek a remedy for damage sustained to the property, as well as damages relating to a delay in the repair or remedy of said damage. The controversy is not one solely of insurance coverage, the controversy involves claims against the Association for failure to promptly repair damage sustained to the Property and failure to timely recompense damage to property, which arose out of the fire and the Associations subsequent delay and inaction.

Bearing this in mind, the entirety of Defendant's argument proffering realignment is misguided on the facts. Saylab v.Hartford Mutual Insurance Co. as well as U.S. Fid. &Guar. Co. v. A&S Mfg. Co. Inc. are both cases in which the issue involved was the extent of policy coverage upon the insured.[5] Furthermore, the Defendant's assertion that "potential cross claims… do not destroy diversity. In a coverage dispute, the insurer-policyholder dispute is paramount, dominating over any cross-claims." (Internal citations omitted) is misguided for several reasons. Firstly, the claims against the Association are not 'potential,' rather they have already been made in the Complaint. Secondly, no language asserting that insurer disputes are paramount to other claims asserted in a case involving a coverage dispute appears

---

[4] Id.

[5] "The 'real controversy' in this lawsuit is whether any of the Insurance Defendants owes a duty, through contract or otherwise, to indemnify and defend Don Juan." Saylab, et al. v. Hartford Mutual Insurance Company, 271 F. Supp. 2d 122, 116, (D.D.C. 2003). "USF&G filed this action against A&S, Federal and Hartford. USF&G sought a declaration of the parties' rights and duties as they relate to A&S's claims for insurance coverage for environmental liabilities. Each insurer denies liability to A&S. Each also contends that if it were liable, one or both of the other insurers would be liable to it for reimbursement under various theories." U.S. Fid. & Guar. Co. v. A&S Mfg. Co., Inc., 48 F.3d 131, 132 (4th Cir. Ct. App. 1995).

in the cases relied upon, let alone are at the holding.[6] Thirdly, the cross claims involved in the case cited, were ultimately cross claims regarding the extent of insurance coverage between the insurers, and as such are distinguishable from the current suit. Here Defendant Travelers admits coverage, but the Association has taken no action to compel the insurer to properly value the loss. Finally, the claims against the Association are not cross claims.

The claims against the Association are in no way subsumed by claims regarding the extent of the insurance coverage or the amount of the loss, nor are they secondary to determination regarding said coverage. In fact, irregardless of the rights and liabilities regarding the insurance policy, a determination as to rights and liabilities regarding both the failure of the Association to timely make repairs, as well as the Association's conduct in precluding Plaintiff's from repairing the property remain, alongside the Associations statutory and organic duty to maintain proper and adequate coverage. As such, it cannot be fairly asserted that the suit's primary purpose is a determination as to insurance coverage, for it is for more.

Plaintiff's complaint does assert various defaults by the Association, as cited in Defendant Travelers opposition. Ill-defined or not, these claims are not clearly subsidiary to the dispute regarding insurance coverage. Secondly, the implication that the lack of a specific prayer for damages implies that the defendant is nominal is likewise without merit. Were the Association a nominal Defendant then no request for relief would exist. Further, the ability to manifest a specific measure of damages for those claims does not demand that those claims

---

[6] Rather language regarding the subsuming of claims was in relation to the three insurers attempting to discern which company was ultimately responsible for the coverage. The Court found that the question was ultimately one of which Insurer covers the loss, and that "any disputes existing among the insurers regarding contribution are ancillary to the primary issue of the duty to indemnify.... The dispute among the insurers is secondary to whether the insurers are liable to A&S and is hypothetical until the insurers' liability is determined. The potentially substantial, though not principal, controversies that USF&G raises are subsumed in the primary issue of the insurers' liability to A&S." Such a fact pattern is distinguishable from the current situation.

are invalid, rather it points that such claims are not as easily quantifiable as claims against an insurance company providing a clearly defined insurance policy. At worst Plaintiffs should be directed to amend the complaint, or Defendant Travelers can simply seek discovery.

### c.  Fraudulent Joinder

To successfully assert fraudulent joinder, the Defendant "must show either that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional fact."[7] This standard has not been met in the current situation. Plaintiffs do assert cognizable claims against the Association under both the District of Columbia Code, and the Association's By-Laws, as fully set forth above. There also has been no outright fraud it the pleading of jurisdictional fact. Assuming arguendo that the Defense is correct in stating that there is no action regarding the allegation that the Association failed to place proper coverage, the allegation that the Association has failed to timely adjust the loss still remains, as well as the allegation of failure to repair the unit, and the Association's failure to complete repairs attempted on the limited common elements.

### d.  Plaintiff's Request for Attorney Fees

As set forth in this response, incorporating by reference the pleadings in this matter to date, Plaintiff's renew their request for attorney's fees and costs as Defendant Travelers lacks an objectively reasonable basis for seeking removal and have filed this motion solely for delay. Irregardless of how Defendant Travelers subjectively construes the language of the Complaint, and engages in pure conjecture as to whether Plaintiffs are attempting to manipulate the rules of diversity jurisdiction, the fact still remains that on the face of the

---

[7] Lois Walker Brown, et al. v. Brown & Williamson, et al., 26 F Supp 2d 74, 77-78 (D.D.C. 1998), *as stated in Plaintiffs original Petition for Remand*.

complaint defaults are alleged against the Association, with a prayer for relief made thereof, which are legally cognizable in the District of Columbia.

### IV.    Conclusion

For the foregoing reasons, Plaintiff again respectfully requests that this matter be remanded to the District of Columbia Superior Court.

Respectfully Submitted,


   /s/ Kenneth J. Loewinger
Kenneth J. Loewinger, #34520
Loewinger & Brand, PLLC
471 H Street, NW
Washington, DC 20001
*Counsel for Plaintiffs*
kloewinger@loewinger-brand.net

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that a copy of the foregoing Plaintiff's Response to Defendant's Opposition to Plaintiff's Motion to Remand was mailed, first class, postage prepaid, on this ___21___ day of May, 2007, to the following:

Geoffrey H. Genth, Esq.
Steven M. Klepper, Esq.
Kramon & Graham, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
*Counsel for Defendant Travellers*

Jeffrey M. Hamberger, Esq.
Kass, Mitek & Kass, PLLC
1050 17th Street, N.W.
Suite 1100
Washington, D.C. 20036
*Counsel for Defendant Association*

                                        ___/s/ Kenneth J. Loewinger___
                                        Kenneth J. Loewinger #34520
                                        Loewinger & Brand, PLLC
                                        471 H Street, NW
                                        Washington, DC 20001
                                        Kloewinger@loewinger-brand.net
                                        (202) 789-2382
                                        *Counsel for Plaintiffs*

additional assessment against the Unit Owners in proportion to the percentage interest in their Units, payable into such reserve fund in a lump sum or in installments as the Board of Directors may determine. The Board of Directors shall give notice of any such further assessment on the Unit Owners by a statement in writing giving the amount and reasons therefor, and such additional assessments shall become due and payable, unless otherwise specified in the notice, with the next monthly assessment payment which is due more than ten (10) days after the delivery or mailing of such notice of additional assessment. All Unit Owners shall be obligated to pay the adjusted monthly amount or, if the additional assessment is not payable in installments, the amount of such assessment.

The proportionate interest of any Unit Owner in any reserve fund shall be considered an appurtenance of his or her Unit and shall not be separately withdrawn, assigned or transferred or otherwise separated from the Unit to which it is appurtenant, and shall be deemed to be transferred with such Unit.

<u>ARTICLE VI</u>.

<u>INSURANCE</u>

A.   <u>Insurance Obtained by the Association</u>

The Association shall obtain and maintain, to the extent reasonably available:

1.   Property insurance on the Common Elements and the Units, exclusive of improvements and betterments installed in the Units by the Unit owners, insuring against those risks of direct physical loss commonly insured against, in an amount equal to 100% of the replacement cost of the insured property.

2.   Liability insurance, including medical payments insurance, in an amount determined by the Board of Directors, but not less than $1,000,000, that covers all occurrences commonly insured against for death, bodily injury, or property damage arising out of or in connection with the use, ownership, or maintenance of the Common Elements.

3.   Any other insurance that the Board of Directors deems appropriate to protect the Association or the Unit Owners.

B.   <u>Notice to Unit Owners</u>

21


EXHIBIT

A

If the insurance described in Section A of this Article is not reasonably available, the Association shall promptly cause notice of the unavailability of insurance to be hand-delivered or sent prepaid by the United States mail to all of the Unit Owners.

C.   Insurance Terms

An insurance policy carried pursuant to Section A of this Article shall provide that:

1.   A Unit Owner is an insured person under the policy with respect to liability that arises out of the Unit Owner's interest in the Common Elements or membership in the Association; and

2.   The insurer waives the insurer's right to subrogation under the policy against any Unit owner or member of the Unit Owner's household; and

3.   An act or omission by the Unit Owner, unless acting within the scope of his or her authority on behalf of the Association, shall not void the policy or be a condition to recover under the policy; and

4.   If at the time of loss under the policy, there is other insurance in the name of the Unit Owner that covers the same risk covered by the policy, the Association's policy shall provide primary insurance; and

5.   If the Association brings suit against a Unit Owner, or vice versa, with respect to any loss, the insurer shall provide for the defense of the defendant.

D.   Insurance Protections

1.   Any loss covered by the property insurance under Section A.1 of this Article shall be adjusted with the Association, but the insurance proceeds for the loss shall be payable to the insurance trustee designated to receive payments or otherwise to the Association, and not to any mortgagee or beneficiary under a deed of trust.  The insurance trustee or the Association shall hold any insurance proceeds in trust for the Unit Owners or lienholders as the Unit Owners' or lienholders' interests may appear.  Subject to the provisions of Section E of this Article, the proceeds shall be disbursed first for the repair or restoration of the damaged property.  A Unit Owner or lienholder shall not be entitled to receive any portion of the proceeds unless there is a surplus of proceeds after the property has been completely repaired or restored or the Condominium is terminated.  The Board of Directors

22

shall have the right to act as insurance trustee, and all parties beneficially interested in such insurance coverage shall be bound thereby. The sole duty and responsibility of the insurance trustee shall be to receive the insurance proceeds as are paid and to hold and distribute the same for the purposes stated in these Bylaws.

2.   An insurance policy issued to the Association shall not prevent a Unit Owner from obtaining insurance for his or her own benefit.

3.   An insurer that has issued an insurance policy under this Article shall issue certificates of insurance to the Association and, upon written request, to any Owner, mortgagee, or beneficiary under a deed of trust. The insurer that issues the policy may not cancel or refuse to renew the policy until 30 days after notice of the proposed cancellation or nonrenewal has been mailed to the Association, any Unit Owner, and any mortgagee or beneficiary under the deed of trust to whom a certificate of insurance has been issued at their respective last known addresses.

E.   Reconstruction and Repair

1.   Any portion of the Condominium for which insurance is required under this Article that is damaged or destroyed shall be repaired or replaced promptly by the Association unless the Condominium is terminated, repair or replacement would be illegal under any health or safety statute, rule or regulation, or 80% of the Unit Owners, including every Owner of a Unit or assigned Limited Common Element which will not be rebuilt, vote not to rebuild. The cost of repair or replacement in excess of insurance proceeds shall be a Common Expense.

2.   If the entire Condominium is not repaired, the insurance proceeds attributable to the damaged Common Elements shall be used to restore the damaged area to a condition compatible with the remainder of the Condominium. The insurance proceeds attributable to the Units and Limited Common Elements that are not rebuilt shall be distributed to the Owners of those Units and the Owners of the Units to which those Limited Common Elements appertained, or to lienholders, as their interests may appear. The remainder of the proceeds shall be distributed to all of the Unit Owners or lienholders, as their interests may appear, in proportion to the interests in the Common Elements appertaining to all of the Units.

3.   If the Unit Owners vote not to rebuild any Unit, that Unit's allocated interests shall be automatically reallocated upon the vote as if the Unit had been condemned under Section 45-1806 of the Act, and the Association shall promptly prepare, execute, and

23

record an amendment to the Condominium Instruments reflecting the reallocations. Notwithstanding the provisions of this Article, Section 45-1838 of the Condominium Act shall govern the distribution of insurance proceeds if the Condominium is terminated.

F.    Individual Insurance

Each Condominium Unit Owner is encouraged to obtain insurance at his or her own expense to cover his or her personal belongings, unit, improvements and betterments, personal liability exposures, additional living expenses, and the Association's property insurance deductible amounts that he or she may be responsible for under Section G of this Article. Tenants are also encouraged to obtain the necessary insurance for their protection, including liability and property coverage. No Unit Owner shall maintain insurance coverage which will tend to decrease the amount which the Association may realize under any insurance policy which it may have in force at any particular time. The Board of Directors may require that each Unit Owner shall file with the Managing Agent a copy of each individual policy of insurance purchased by the Unit Owner within thirty (30) days after its purchase; and the Board of Directors may also require that each Unit Owner shall notify the Board of Directors of all improvements made to his or her Unit having a value in excess of One Thousand Dollars ($1,000.00).

G.    Premiums and Deductibles

1.    Premiums upon insurance policies purchased by the Association shall be paid by the Association and charged as a Common Expense.

2.    The Association shall pay the deductible for loss or damage in which the event causing loss or damage initially occurred in or to the Common Elements. The Association shall not pay the deductible for loss or damage arising from an event which initially occurred in or to a Unit. In such case, the Unit Owner shall be responsible for the deductible.

3.    The Association's property insurance deductible is not a cost of repair or replacement in excess of insurance proceeds, but rather an expense that is obligated before insurance proceeds are received.

4.    The Managing Agent, as provided by the Board of Directors' Resolution, shall determine where the event initially occurred that caused the loss or damage, and who is responsible for the deductible. If a Unit Owner disagrees with the Managing Agent's

24

decision, the Unit Owner may appeal the matter to the Board of Directors.

H.    The Condominium Act and Insurance

If there is a conflict between the insurance provisions in these Bylaws and the provisions in the Condominium Act, as amended from time to time, the provisions in the Act shall control.

ARTICLE VII.

OBLIGATIONS OF THE OWNERS

A.    Assessments

All Owners are obligated to pay the installments on their contribution to the Common Expenses and assessments imposed by the Association.

B.    Maintenance and Repair

Every Owner shall promptly perform all maintenance and repair work required to be performed by him or her in the Declaration, these By-Laws and the Condominium Act.

C.    Use Restrictions

In order to provide for a for a community of congenial residents and to provide for the protection of the value of the Condominium Units, the use of Carrollsburg Square Condominium and the sale, lease, rental and transfer of any Condominium Unit by any Owner, shall be subject to the following provisions:

1.    Restrictions

a.    No Unit Owner or other resident of the Condominium shall post any advertisements or posters of any kind in or on the Condominium except as authorized by the Board or as provided by Rules and Regulations of the Association.

b.    All Units shall be used only for private residential purposes and such other uses as may be permitted by the zoning regulations of the District of Columbia.  No activity shall be conducted or maintained in any Unit or upon any of the Common Elements which is not in conformity with the zoning regulations of the District of Columbia.

25

12709 057

## ARTICLE VI

### INSURANCE

#### A. Authority To Purchase

Except builder risk and other required insurance fur-
nished by the Developer during construction, all insurance
policies upon the property (except as hereinafter allowed)
including each Condominium Unit, shall be purchased by the
Council of Co-Owners acting through the Board of Directors
or the Managing Agent for the benefit of the respective
Condominium Co-Owners and their respective mortgagees as
their interest may appear, and shall provide for the issu-
ance of certificates of insurance and mortgage endorsements
to the holders of the mortgages on the Condominium Units or
any of them and, if the insurance companies will agree, shall
provide that the insurer waives its right of subrogation as
to any claims against the Condominium Unit Co-Owners, the
Council of Co-Owners, the Managing Agent, the Board of Direc-
tors, and their respective agents.  The Managing Agent or the
Board of Directors shall obtain such insurance for the prop-
erty against loss or damage by fire and such other hazards
under such terms and for such amounts as shall be deemed
necessary by the Board of Directors or requested from time
to time by a majority of the Co-Owners.  Such insurance cov-
erage shall be written on the Carrollsburg Square Condominium
and on the respective Condominium Units and shall provide for
the insurance proceeds covering any loss to be payable to the
Insurance Trustee named, as hereinafter provided, or to its
successor, for the benefit of each Co-Owner and to his mort-
gagee, for his respective Condominium Unit and for his Indi-
vidual Percentage Interest in the Common Elements and the
Limited Common Elements.  Premiums for such fire and other
hazard insurance and the fee to the Insurance Trustee for its
services rendered hereunder shall be Common Expenses.  Provi-
sions for such insurance shall be without prejudice to the
right of each Co-Owner to insure his own Condominium Unit for
his benefit, but such insurance shall not diminish the lia-
bility of the insurance carrier with whom contracts of insur-
ance have been made by the Board of Directors or Managing
Agent on behalf of all Co-Owners.  The Insurance Trustee at
the time of the deposit of such policies and endorsements
shall first acknowledge that the policies and any proceeds

BL-19

EXHIBIT

B



BOOK    PAGE
12709  628

thereof will be held in accordance with the terms of the Declaration and these By-Laws. All insurance policies shall require written notice of cancellation to the Managing Agent or the Board of Directors and where the same is appropriate to any mortgagee of any Condominium Unit.

B.  Separate Insurance

Each Condominium Unit Owner may obtain insurance at his own expense affording coverage upon his personal property and for his personal liability, as may be required by law, but all such insurance shall contain the same waiver of subrogation as that set forth in the preceding paragraph, if the same is available, and must be obtained from an insurance company from which the Council of Co-Owners obtains coverage against the same risk, liability or peril, if the Council of Co-Owners has such coverage.

C.  Coverage

1.  Casualty:  The Carrollsburg Square Condominium shall be insured in an amount equal to the maximum insurable replacement value thereof (exclusive of excavations and foundations) as determined annually by the insurance company affording such coverage.  Such coverage shall afford protection against:

a.  loss or damage by fire and other hazards covered by the standard extended coverage endorsement;

b.  such other risks as from time to time customarily shall be covered with respect to buildings similar in construction, location and use as the Carrollsburg Square Condominium, including but not limited to vandalism, malicious mischief, windstorm and water damage.

2.  Public liability and property damage in such amounts and in such forms as shall be required by the Board of Directors which, however, in no event shall be less than $100,000 with respect to any individual and $300,000 with respect to any one accident or occurrence and $50,000 with respect to any claim for property damage.

BL-20

3. Workmen's Compensation policy where necessary to meet the requirements of law.

4. All liability insurance shall contain cross-liability endorsements to cover liabilities of the Council of Co-Owners as a group, and the Board of Directors and Managing Agent to each individual Condominium Unit Co-Owner.

D. Premiums

Premiums upon insurance policies purchased by the Council of Co-Owners shall be paid by the Council of Co-Owners and charged as a Common Expense.

E. Insurance Trustee

The Insurance Trustee shall be designated by the holder or holders of more than 51 percent of the mortgages or deeds of trust encumbering the Condominium Units. Should there be no such mortgage or deed of trust, then the Board of Directors shall have the right to designate the Insurance Trustee, and all parties beneficially interested in such insurance coverage shall be bound thereby.

All insurance policies purchased by the Council of Co-Owners shall be for the benefit of the Council of Co-Owners, each Co-Owner and their mortgagees, as their respective interests may appear, and shall provide that all proceeds payable as a result of casualty losses shall be paid the designated Insurance Trustee with trust powers as may be approved by the Council of Co-Owners. The Insurance Trustee shall not be liable for payment of premiums nor for the renewal of the policies, nor for the sufficiency of coverage, nor for the form or contents of the policies, nor for the failure to collect any insurance proceeds. The sole duty of the Insurance Trustee shall be to receive such proceeds as are paid and to hold the same in trust for the purposes elsewhere stated herein, and for the benefit of the Council

BL-21



of Co-Owners, the Co-Owners and their respective mortgagees, in the following shares, but such shares need not be set forth upon the records of the Insurance Trustee:

    1.  <u>Common Elements</u>:

        Insurance proceeds payable on account of damage to Common Elements shall be applied by the Insurance Trustee to benefit each Co-Owner and his mortgages, if any, in proportion to the Individual Percentage Interest of such Co-Owner.

    2.  <u>Limited Common Elements</u>:

        Insurance proceeds payable on account of damage to Limited Common Elements shall be applied by the Insurance Trustee for the benefit of those Co-Owners directly sharing the benefit of the Limited Common Elements damaged.

    3.  <u>Condominium Units</u>:

        Insurance proceeds on account of damage to Condominium Units shall be held in the following undivided shares:

        a.  Where two-thirds or less of the Condominium Units are damaged or destroyed there shall be compulsory restoration and repair and the insurance proceeds shall be applied for the benefit of the Co-Owners of the affected Condominium Units in proportion to the cost of repairing the damage suffered by each damaged Condominium Unit.  Upon the request of the Insurance Trustee, the Council of Co-Owners or the Board of Directors shall certify to the Insurance Trustee the appropriate portions as aforesaid, and each Owner shall be bound by the Insurance Trustee may rely upon such certificate.

        b.  Where more than two-thirds of the Condominium Units are damaged or destroyed or where there is total destruction of all the Condominium Units and where the same are not to be restored, the insurance proceeds shall be payable to all of the Condominium Unit Co-Owners in proportion to their respective Individual Percentage Interests.

BL-22

## 4. Mortgagees:

In the event there is a recorded mortgage on a Condominium Unit, the share of the Co-Owner shall be held in trust for the Mortgagee thereof and the Co-Owner as their interests may appear.

## F. Distribution of Proceeds

Proceeds of insurance policies received by the Insurance Trustee shall be distributed to or for the benefit of the Co-Owner entitled thereto after first paying or making provision for the payment of the expense of the Insurance Trustee in the following manner:

### 1. Reconstruction or Repair:

If the damage for which the proceeds were paid is to be repaired or reconstructed, the proceeds shall be paid to defray the cost thereof as elsewhere provided. Any proceeds remaining after defraying such costs shall be distributed to the Co-Owner and the mortgagee, if any, entitled thereto; all remittances to Co-Owners and their mortgagees being payable jointly to them. This is a covenant for the benefit of any mortgagee of a Condominium Unit and may be enforced by him.

### 2. Failure to Reconstruct or Repair:

If it is determined in the manner elsewhere provided that the damage for which the proceeds are paid shall not be reconstructed or repaired, the proceeds shall be distributed pro rata to the Co-Owner entitled thereto, after first paying off, out of the respective shares of the Co-Owners, to the extent sufficient for that purpose, all liens, including mortgage liens, on the Unit of each Co-Owner. Remittances to Co-Owners and their mortgagees shall be payable jointly to them. This is a covenant for the benefit of any mortgagee of a Condominium Unit and may be enforced by him.

### 3. Certificate:

In making distribution to Co-Owners and their mortgagees, the Insurance Trustee may rely upon a certificate of the Council of Co-Owners or Board of Directors as

BL-23

to the names of the Co-Owners and their respective shares
of the distribution. Upon request of the Insurance Trustee,
the Council of Co-Owners or Board of Directors forthwith
shall deliver such certificate.

G.  Reconstruction or Repair of Casualty Damage

1.  Duty To Reconstruct or Repair:

If any part of the Common Elements or the Condo-
minium Units shall be damaged by casualty, the determination
of whether or not to reconstruct or repair the same shall be
made as follows:

a.  Where there is partial destruction, which shall
be deemed to mean destruction which does not render two-thirds
or more of the Condominium Units untenantable, there shall be
compulsory reconstruction or repair.

b.  Where there is total destruction, which shall
be deemed to mean destruction which does render more than two-
thirds of the Condominium Units untenantable, reconstruction
or repair shall not be compulsory unless at a meeting which
shall be called within ninety (90) days after the occurrence
of the casualty, or, if by such date, the insurance loss has
not been finally adjusted, then within thirty (30) days
thereafter, all of the Co-Owners unanimously vote in favor
of such reconstruction or repair.

c.  Any such reconstruction or repair shall be
substantially in accordance with the original Plans and
Specifications under which the Tiber Island Condominium was
originally constructed.

d.  Encroachments upon or in favor of Condominium
Units which may be created as a result of such reconstruc-
tion or repair shall not constitute a claim or basis at a
proceeding or action by the Co-Owners upon whose property
such encroachment exists, provided that such reconstruction
was substantially in accordance with the Plans and Specifi-
cations under which the Condominium Regime was originally
constructed.  Such encroachments shall be allowed to con-
tinue in existence for so long as the buildings stand.

BL-24



e.  Certificate:  The Insurance Trustee may rely
upon a certificate of the Council of Co-Owners or the Board
of Directors certifying as to whether or not the damaged
property is to be reconstructed or repaired.  The Council of
Co-Owners or the Board of Directors, upon request of the
Insurance Trustee, shall deliver such certificate as soon as
practical.

2.  Responsibility:

If the damage is only to those parts of one Condomin-
ium Unit for which the responsibility of maintenance and repair
is that of the Co-Owner, then the Co-Owner shall be responsible
for reconstruction and repair after casualty.  In all other
instances the responsibility of reconstruction and repair after
casualty shall be that of the Council of Co-Owners.

a.  Estimate of Costs:  Immediately after a
casualty causing damage to property for which the Council of
Co-Owners has the responsibility of maintenance and repair,
the Council of Co-Owners shall obtain reliable and detailed
estimates of the cost to place the damaged property in condi-
tion as good as that before the casualty.  Such costs may in-
clude professional fees and premiums for such bonds as the
Board of Directors desires.

b.  Assessments:  If the proceeds of insurance are
not sufficient to defray the estimated costs of reconstruc-
tion and repair by the Council of Co-Owners (including the
aforesaid fees and premiums, if any) assessments shall be
made against all the Co-Owners in proportion to their Indi-
vidual Percentage Interests in sufficient amounts to provide
funds to pay the estimated costs.  If at any time during re-
construction and repair, or upon completion of reconstruction
and repair, the funds for the payment of the costs thereof
are insufficient, assessments shall be made against all the
Co-Owners in proportion to their Individual Percentage Inter-
ests in sufficient amounts to provide funds for the payment
of such costs.

c.  Construction Funds:  The funds for payment of
costs of reconstruction and repair after casualty, which shall
consist of proceeds of insurance held by the Insurance Trustee

BL-25

and funds collected by the Council of Co-Owners from assessments against Co-Owners, shall be disbursed in payment of such cost in the following manner.

(1) Council of Co-Owners: If the amount of the estimated costs of reconstruction and repair exceeds the total of the annual assessments for Common Expenses made during the year in which the casualty occurred, then the sums paid upon assessments to meet such costs shall be deposited by the Council of Co-Owners with the Insurance Trustee. In all other cases, the Council of Co-Owners shall hold the sums paid upon such assessments and disburse the same in payment of the costs of reconstruction and repair.

(2) Insurance Trustee: The proceeds of insurance collected on account of casualty, and the sums deposited with the Insurance Trustee by the Council of Co-Owners from collections of assessments against Co-Owners on account of such casualty, shall constitute a construction fund which shall be disbursed in payment of the costs of reconstruction and repair in the following manner.

(a) Co-Owner: The portion of insurance proceeds representing damage for which the responsibility of reconstruction and repair lies with the Co-Owner; to such contractors, suppliers and personnel as do the work or supply the materials or services required for such reconstruction or repair, in such amounts and at such times as the Co-Owner may direct, or if there is a mortgagee endorsement, then to such payees as the Co-Owner and the first mortgagee jointly direct. Nothing contained herein, however, shall be construed so as to limit or modify the responsibility of the Co-Owner to make such reconstruction or repair.

(b) Council of Co-Owners - lesser damage: If the amount of the estimated costs of reconstruction and repair is less than the total of the annual assessments for Common Expenses made during the year in which the casualty occurred, then the construction fund shall be disbursed in payment of such costs upon the order of the Council of Co-Owners; provided, however, that upon request of a mortgagee which is a beneficiary of an insurance policy, the proceeds of which are included in the construction fund, such fund shall be disbursed in the manner hereafter provided for the reconstruction and repair of major damage.

BL-26

(c)  Council of Co-Owners - major damage:
If the amount of the estimated costs of reconstruction and
repair of the Condominium Unit or other improvement is more
than the total of the annual assessments for Common Expenses
made during the year in which the casualty occurred, then the
construction fund shall be disbursed in payment of such costs
in the manner required by the Board of Directors of the Council
of Co-Owners and upon approval of an architect qualified to
practice in the District of Columbia and employed by the Coun-
cil of Co-Owners acting through their Board of Directors to
supervise the work.

(d)  Surplus:  It shall be presumed that the
first monies disbursed in payment of costs of reconstruction
and repair shall be from insurance proceeds; and if there is
a balance in a construction fund after payment of all costs
of the reconstruction and repair for which the fund is es-
tablished, such balance shall be distributed jointly to the
Co-Owners and their mortgagees who are the beneficial owners
of the fund.

(e)  When the damage is to both Common
Elements and Condominium Units, the insurance proceeds shall
be applied first to the costs of repairing the Common Elements
and the balance to the Condominium Units in the shares above
stated.

d.  Insurance Adjustments:  Each Co-Owner shall
be deemed to have delegated to the Board of Directors his
right to adjust with insurance companies all losses under
policies purchased by the Council of Co-Owners except in any
case where the damage is restricted to one Condominium Unit,
subject to the rights of mortgagees of such Co-Owners.

BL-27